# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** :

: **CRIMINAL NO. 1:CR-19-67**

**v.** : **(JUDGE MANNION)**

**LEOVIJILDO MITRA-HERNANDEZ,** :

:
**Defendant**
:

## MEMORANDUM

Pending before the court is the defendant's Amended Motion to Suppress Identity-Related Evidence and Statements pursuant to the Fourth and Fifth Amendments to the United States Constitution. (Doc. 19). A hearing was held on the matter on August 6, 2019. Upon consideration of the motion and related materials (Doc. 17, Doc. 27, Docs. 35-37), as well as the testimony presented at the hearing (Doc. 34), the defendant's motion will be **DENIED**.

According to the record, on December 18, 2018, Officers Lutz and Cabrera, Immigration and Customs Enforcement ("ICE") officers, who were members of the York ERO Fugitive Operations Team, were conducting a targeted operation to locate Juan Ramiro, a person known to immigration officials to be in the United States illegally. Mr. Ramiro had received a traffic citation in the Borough of Hanover and had listed the address of 22 West

Walnut Street, Hanover, Pennsylvania, as his residence. The officers knew Mr. Ramiro to be a male of Hispanic descent and approximately 5'7" tall. From the traffic citation, the officers also knew that Mr. Ramiro's date of birth was June 4, 1994, and that he was driving a black four-door Hyundai owned by a person by the name of Karina Perez at the time he was given the citation. Officer Cabrera testified that he had obtained a picture of a Juan Ramiro from their database.[1] The officers began surveilling the 22 West Walnut Street residence at approximately 5:00 a.m. on the morning of December 18, 2018.

On that same morning, at 5:45 a.m., the defendant left his residence at 22 West Walnut Street, Hanover, Pennsylvania, where he lived with his wife, children and sister-in-law. The defendant got into his car, a silver Chevy Traverse, and began driving to work. Believing that the defendant met the general description of Mr. Ramiro, Officers Lutz and Cabrera pulled the defendant over about a mile and a half from his residence. Officer Cabrera approached the driver's side of the defendant's vehicle, while Officer Lutz approached the passenger's side of the vehicle. Officer Cabrera identified himself and Officer Lutz as officers with ICE and requested that the defendant produce identification.[2] When the defendant inquired as to why he was being

---

[1] It was not established whether it was the same Juan Ramiro they were looking for on the day in question.

[2] Officer Cabrera originally spoke to the defendant in English. However,
(continued...)

stopped, he was informed that the officers were conducting an investigation and was again asked for identification.

At that time, the defendant produced his Mexican National Identification Card which identified him as Leovijildo Mitra-Hernandez. Officer Cabrera inquired as to the defendant's citizenship and the defendant responded that he was a citizen of Mexico. Officer Cabrera asked if the defendant had any documentation demonstrating that he had permission to be in the United States, which the defendant denied. The defendant was asked to exit his vehicle, which he did. Officer Cabrera then inquired as to whether the defendant had ever been deported from the United States, which the defendant admitted he had been. When asked whether the defendant had applied for permission to re-enter the country or if he had any immigration application pending, the defendant indicated that he did not. The defendant was asked if he had re-entered the country illegally and he indicated that he had re-entered the country illegally. The defendant was then arrested for being in the country illegally and was placed in handcuffs. A check of agency indices confirmed that the defendant had been ordered removed on July 15, 2008, and was, in fact, removed on July 30, 2008.

By indictment filed on February 27, 2019, the defendant has been

---

(...continued)
when the defendant indicated he was more comfortable speaking Spanish, Officer Cabrera communicated with him in Spanish.

3

charged with illegal re-entry in violation of 8 U.S.C. §1326(a) and 6 U.S.C. §§202(3) and (4) and 557. The defendant entered a plea of not guilty to the charge on March 19, 2019. In anticipation of his trial, the defendant has filed the instant motion to suppress the identity-related evidence and statements given to the ICE officers.

In his motion, the defendant initially argues that the ICE officers violated his Fourth Amendment rights in that they lacked reasonable suspicion to initiate a traffic stop and then to extend the stop for an investigative detention because there was no evidence of a traffic violation or criminal activity. Under the circumstances of this case, the defendant argues that the officers should have allowed him to leave once they learned that he was not the individual who was the subject of their investigation. Moreover, the defendant argues that the ICE officers violated his Fifth Amendment rights by failing to provide him with Miranda[3] warnings after affecting a seizure of his person that amounted to a *de facto* arrest and then interrogating him. As a result of these alleged violations, the defendant requests that this court suppress "all identity evidence, physical and testimonial, in accordance with the Fourth Amendment."

The United States Court of Appeals for the Third Circuit has previously considered whether identity-related information should be suppressed as a

---

[3]Miranda v. Arizona, 396 U.S. 868 (1969).

4

result of an unlawful arrest. In United States v. Bowley, 2005 WL 1398632 (D.V.I. June 08, 2005), the defendant was charged with illegally re-entering the United States after having been previously deported in violation of §1366(a), (b)(2). The defendant moved to suppress all evidence, including statements he made that he was illegally in the United States, statements he made after refusing to waive Miranda rights, his passport and fingerprints. The district court granted the motion in part and denied it in part. The government did not appeal the suppression order.

At trial, the government sought to introduce the warrant of deportation from the defendant's immigration file and testimony of the agents who were present when the defendant was originally deported. The defendant filed a motion *in limine* to exclude that evidence arguing that it was precluded by the prior suppression order. The government challenged the defendant's motion arguing that his identity and documents in his immigration file could not be suppressed and claiming that the defendant had lawfully been in custody when his fingerprints were scanned. The court construed the government's response as a motion for reconsideration of the original suppression order and denied the motion to reconsider on the merits. The government filed an appeal to the Third Circuit arguing that even if the defendant's arrest was illegal, evidence related to his true identity and his prior deportation was not subject to suppression. See United States v. Bowley, 435 F.3d 426 (3d Cir.

2006).

In considering the government's appeal, the Third Circuit agreed with the government and concluded that suppression of identity information was not appropriate in light of the Supreme Court's statement that "[t]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred. Id. at 430 (citing INS v. Lopez-Mendoza, 468 U.S. 1032, 1039 (1984)). The Third Circuit doubted "that the Court lightly used such a sweeping word as 'never' in deciding when identity may be suppressed as the fruit of an illegal search of arrest.'" Id. at 430.

The Third Circuit noted, however, that the Supreme Court did leave open the possibility that such information may be suppressible, if the information was obtained through "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." Id. (citing Lopez-Mendoza, 468 U.S. at 1050-51). Neither the Supreme Court in Lopez-Mendoza, nor the Third Circuit in Bowley, has precisely defined such an egregious violation. However, in creating the "egregious violation" exception, the Supreme Court cited to its decision in Rochin v. California, 342 U.S. 165 (1952). In that case,

6

> [h]aving 'some information that (the petitioner here) was selling narcotics,' three deputy sheriffs of the County of Los Angeles, on the morning of July 1, 1949, made for the two-story dwelling house in which [the petitioner] lived with his mother, common-law wife, brothers and sisters. Finding the outside door open, they entered and then forced open the door to [petitioner's] room on the second floor. Inside they found petitioner sitting partly dressed on the side of the bed, upon which his wife was lying. On a 'night stand' beside the bed the deputies spied two capsules. When asked 'Whose stuff is this?' [the petitioner] seized the capsules and put them in his mouth. A struggle ensued, in the course of which the three officers 'jumped upon him' and attempted to extract the capsules. The force they applied proved unavailing against [the petitioner's] resistance. He was handcuffed and taken to a hospital. At the direction of one of the officers a doctor forced an emetic solution through a tube into [the petitioner's] stomach against his will. This 'stomach pumping' produced vomiting. In the vomited matter were found two capsules which proved to contain morphine.

Id. at 166. At trial, the "chief evidence against [the petitioner] was the two capsules." Id. He was convicted "on the charge of possessing 'a preparation of morphine.'" Id.

On appeal, the Supreme Court reversed the judgment because "the conviction of the petitioner had been obtained by methods that offend the Due Process Clause." Id. at 174. The Court reasoned, in part, that

> this is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents-this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation.

Id. at 172.

7

Although the contours of the egregious violation exception have yet to be precisely defined in the Third Circuit, having considered the factual circumstances presented in Rochin, as relied upon by the Supreme Court in carving out the exception, the court here is satisfied that no such egregious violation has occurred in this case.

Thus, based on the foregoing, to the extent the defendant seeks to suppress any identity information, physical or testimonial, regardless of whether the ICE officers violated his rights in this case, Third Circuit precedent requires that his motion must be denied. An appropriate order shall issue.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated:   December 17, 2019**
19-67-01.wpd